IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01049-RBJ

DAVID TUCKER,

    Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a
Geico Indemnity Company d/b/a Geico, a corporation,

    Defendant.

ORDER

This insurance coverage case is before the Court on cross motions for summary judgment [ECF Nos. 19 and 20]. Because the Court finds that the subject policy did not provide underinsured motorist coverage for the plaintiff, the Court grants defendant's motion and dismisses the case.

## I.    Introduction

If one looks only at the facts of this case, its proper resolution is clear. A couple bought auto insurance from Geico. The female member of that couple, Ms. Bernadette Marquez, not once but twice explicitly declined to purchase coverage for injuries caused by underinsured or uninsured motorists ("UM/UIM coverage"). Accordingly, the couple never paid for any UM/UIM coverage. After the male member of the couple, Mr. David Tucker, was injured in a car accident caused by a driver with insufficient liability insurance to cover the extent of his claimed injuries, he asked Geico to pay him UM/UIM benefits. On these facts, it would seem

clear that Mr. Tucker never purchased UM/UIM insurance, and that Geico has no obligation to pay them.

However, Colorado law introduces a wrinkle into this case.  Under C.R.S. § 10-4-609(1)(a), any automobile liability insurance policy issued in Colorado must contain UM/UIM coverage "except that *the named insured* may reject such coverage in writing." (emphasis added).  Mr. Tucker attempts to turn that wrinkle into a full-blown loophole.  He argues that because he never signed anything purporting to reject such coverage, his policy contains it.  For the reasons that follow, I am not convinced.

## II. Facts

The parties do not dispute the relevant facts.  Plaintiff David Tucker's truck was rear-ended on August 22, 2011.  [ECF No. 1 ¶ 5.]  He claims that the injuries resulting from the accident exceeded, in monetary terms, the value of the underinsured driver's insurance policy. *Id.*  At the time, Mr. Tucker was covered by a Geico insurance policy.  [ECF No. 20 ¶¶ 2, 3.]  Therefore, Mr. Tucker turned to his own insurance provider, Geico, and asked it to pay underinsured motorist benefits.  Geico denied the claim on the basis that the policy contains no such coverage.

To understand the dispute one must go back to 2004 when Mr. Tucker's companion, Bernadette Marquez, purchased a personal auto insurance policy from Geico.  [ECF No. 21, Ex. 1, ¶ 3.]  The policy named Ms. Marquez and Mr. Tucker. *Id.* ¶ 4.  When first issued, the policy contained UM/UIM coverage. *Id.*  However, Ms. Marquez later rejected the UM/UIM coverage on this policy by checking a box on a Colorado Information and Option Form. *Id.* ¶ 5.  The following text accompanied the box: "Do not include Uninsured Motorist coverage in my policy. I understand that this rejection applies to all vehicles on my policy and any subsequent renewals

or reissues." *Id.* As a result, she did not pay the extra premium that would have been due for that coverage.

Ms. Marquez checked that same box on a Colorado Information and Option Form in 2009. *Id.* ¶ 6. This form related to the policy that was in effect at the time of Mr. Tucker's accident. [ECF No. 18 at 4.] When Ms. Marquez signed that form in 2009, both she and Mr. Tucker were listed as named insureds on the policy, and Geico records indicated that Mr. Tucker was Ms. Marquez's spouse.[1] [ECF No. 21, Ex. 1 ¶ 7.] Again, Geico did not charge nor did it receive any money for UM/UIM coverage for this policy. *Id.* ¶ 10. Geico's records reflect the same contact information for both Ms. Marquez and Mr. Tucker. *Id.* ¶ 11. Ms. Marquez repeatedly contacted Geico regarding this policy, including communications regarding payments and adding or removing vehicles from the policy. *Id.* ¶¶ 14, 15.

### III.  Procedural History

Mr. Tucker filed suit against Geico, bringing claims of (1) breach of contract, (2) bad faith, (3) outrageous conduct, (4) and deceptive practices in violation of Colorado law. [ECF No. 1.] Each of these claims is premised in part on the notion that the policy in question contained UM/UIM coverage for Mr. Tucker. The parties filed cross-motions for summary judgment, [ECF Nos. 19 and 20], and those motions are now fully briefed.

### IV.  Standard

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving

---

[1] After the accident but before filing this lawsuit, Mr. Tucker and Ms. Marquez notified Geico that they were not married and had never been married. [ECF No. 21, Ex. 1 ¶ 16.] Geico updated its records accordingly. *Id.*

party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

V. **Discussion**

Geico advances two arguments in favor of summary judgment (and against Mr. Tucker's motion for summary judgment). First, that Ms. Marquez's written rejection of UM/UIM coverage was an effective rejection for other named insureds on the policy pursuant to C.R.S. § 10-4-609(1)(a). Second, that Ms. Marquez acted as Mr. Tucker's agent, and she possessed the apparent authority to reject UM/UIM coverage on Mr. Tucker's behalf. Assuming without deciding that C.R.S. § 10-4-609(1)(a) requires the express rejection of each named insured on an auto insurance policy,[2] the Court finds that Ms. Marquez acted with apparent authority to reject the coverage on behalf of Mr. Tucker.

A. UM/UIM Statute.

Colorado law provides that

---

[2] Whether a single named insured may reject UM/UIM coverage for other named insureds on a policy is an open question in Colorado. Indeed, both parties agree that there are no Colorado cases directly on point here. It would seem that the plain language of the statute, "the named insured," is ambiguous because it does not apparently contemplate the possibility that multiple named insureds may be on a single policy. However, each of the parties in this case argued that the statutory language was unambiguous, although they reached diametrically opposed conclusions in so arguing. Therefore they devoted little if any time to addressing how the Court ought to interpret the statute if it was deemed ambiguous. Fortunately, the Court does not need to address this unsettled question which is more appropriately resolved by the state courts.

> [n]o automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; *except that the named insured may reject such coverage in writing*.

C.R.S. § 10-4-609(1)(a) (emphasis added).

### B. Agency Relationship.

Mr. Tucker argues that this statute means that unless "the named insured," in this case meaning both Ms. Marquez and himself, reject the coverage in writing, the coverage has not been rejected. The Court finds it unnecessary to interpret the UM/UIM statute. The existence of an agency relationship is typically an issue of fact to be determined by the trial court. *In re Marriage of Robbins*, 8 P.3d 625, 628 (Colo. App. 2000). "However, if the underlying facts are undisputed, fact finding is not required, and the legal effect of those facts constitutes a question of law." *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. Ct. App. 2004) (citing *Lakeview Assocs., Ltd. v. Maes,* 907 P.2d 580 (Colo.1995)). Based upon the undisputed facts presented here, the Court finds that Ms. Marquez acted as an agent of Mr. Tucker with apparent authority to reject UM/UIM coverage.

The Restatement (Second) of Agency defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8. A later section of the Restatement provides additional detail about how apparent agency can be created.

> The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized or permitted channels of communication.

Restatement (Second) of Agency § 27.  Under Colorado law, "a principal may be held liable for an agent's actions if the agent is acting pursuant to apparent authority, regardless of whether the principal has knowledge of the agent's conduct." *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 474 (Colo. 1995) (citing *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994)).

At least two other courts have held that agency principles precluded a plaintiff from arguing that his auto insurance policy contained UM/UIM coverage when his wife, the other named insured on the policy, rejected such coverage.  *See, e.g.*, *Acquesta v. Indus. Fire & Cas. Co.*, 467 So.2d 284 (Fla. 1985).  The Florida Supreme Court upheld a lower court's reversal of summary judgment for plaintiffs where the plaintiff's wife rejected uninsured motorist coverage.[3]  The court cited with approval the following passage from the lower court's decision:

> William [the husband] correctly expects the insurance company to be bound by the contract in all respects which are of benefit to him and the law will enforce those expectations.  The insurer correctly expects William to be bound in all respects which are of benefit to it.  More precisely, both are entitled to all they bargained and paid for.  William, by his agent Crystal [his wife], chose not to have uninsured motorist coverage and did not pay for it.

*Acquesta*, 467 So.2d at 285 (quoting *Indus. Fire & Cas. Co. v. Acquesta*, 448 So.2d 1122, 1123 (Fla. Dist. Ct. App. 1984)).[4]  *See also Ridgway v. Shelter Ins. Co.*, 913 P.2d 1231 (Ks. App.

---

[3] Differences in the wording of the Florida and Colorado UM/UIM statutes are immaterial to the resolution of this case, because the Court finds that Ms. Marquez acted with apparent authority to reject the coverage on behalf of Mr. Tucker.  In any event, the statutes are quite similar.

[4] The marital relationship in *Acquesta* played no part in the court's analysis of whether the wife had apparent authority to reject UM/UIM coverage.

1996) (applying implied authority principles to girlfriend's signature for boyfriend on rejection of UM/UIM coverage).

The facts support the existence of an agency relationship here. It is undisputed that Ms. Marquez, at least in communicating with Geico, made all the decisions and executed all the paperwork regarding the policy. [ECF No. 21, Ex. 1 ¶¶ 3-6, 14, 15, 16.] Geico had contact info for both at the same location. *Id.* ¶ 11. That includes identical email addresses for both named insureds. *Id.* When Ms. Marquez checked the box rejecting UM/UIM coverage, the text accompanying the box stated that "this rejection applies to all vehicles on my policy and any subsequent renewals or reissues." *Id.* ¶ 5. These statements, at least on the facts, appear to be "authorized statements of the agent" that suffice to create apparent authority under Section 27 of the Restatement.

While Mr. Tucker disagrees that Ms. Marquez acted as his agent with regard to this policy, he offers no facts suggesting a different conclusion. In fact, all Mr. Tucker offers in response to this argument is the assertion that Geico's position is "nothing more than a fantasy and has no bearing whatsoever to the law." [ECF No. 22 at 3.] Even looking at the facts in the record in the light most favorable to Mr. Tucker, there simply is nothing there suggesting that Ms. Marquez lacked the apparent authority to decline UM/UIM coverage for herself and for Mr. Tucker. *Cf. Rush Creek Solutions*, 107 P.3d at 406 ("The Tribe disagrees [with the argument about apparent authority] generally, but points to no specific facts that it contends are in dispute, does not assert that credibility determinations must be made, and does not assert that any additional facts could be developed upon remand.").

### VI. **Conclusion**

The Court assumes that Mr. Tucker has suffered from the injuries which were apparently unrelated to any fault on his part and hopes that he experiences a full recovery. But the law permits Geico to rely on the apparent authority of Ms. Marquez in her dealings with the company on Mr. Tucker's behalf. Geico, in other words, was justified in believing that Mr. Tucker truly did not want UM/UIM coverage when Ms. Marquez declined Geico's offer of such coverage and thereby avoided the corresponding premium. Because there was no coverage (and no indication of bad faith on Geico's part in reaching that correct conclusion), plaintiff's other claims also fail. Geico's motion for summary judgment [ECF No. 19] is GRANTED and Mr. Tucker's motion for summary judgment [ECF No. 20] is DENIED. This civil action and all claims therein are dismissed with prejudice. As the prevailing party Geico is awarded its costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 10th day of April 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge